## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| KEITH SHERMAN, | : | |
| Plaintiff, | : | No. 3:20-cv-1485 (SRU) |
| | : | |
| v. | : | |
| | : | |
| ROLLIN COOK, et al., | : | |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

Keith Sherman, currently confined at Robinson Correctional Institution in Enfield, Connecticut, filed this complaint *pro se* against eighteen defendants: Rollin Cook, former Commissioner of the Connecticut Department of Correction; wardens Robert Martin and Anthony Corcella; correctional officers Greene and Bragdon; medical providers Matthew Moyer, Mahboob Ashraf, Loreen Williams, Chena McPherson and Ingrid Feder and nurses Allison Hill, K. Phillips, Catherine Slivinski, Aneta Dhillon, Beth Shaw, Nikia Henderson, J. Brennan, and Cecily Athenian.

Sherman claims that the defendants were deliberately indifferent to his serious medical needs in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a) while he was incarcerated at Corrigan-Radgowski Correctional Institution prior to sentencing. He additionally brings claims under 42 U.S.C. § 1983, alleging violations of his federal constitutional rights, and Article I, Sections 8 and 9, of the Connecticut Constitution. Sherman seeks damages as well as injunctive and declaratory relief. His complaint was received on September 30, 2020, and his motion to proceed *in forma pauperis* was granted on October 9, 2020.

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

I.    Facts

Sherman suffers from numerous painful shoulder conditions, including muscle tearing involving the insertional infraspinatus tendon, moderate subacromial/subdeltoid bursitis and tenosynovitis of the long head of the biceps tendon. *See* Compl., Doc. No. 1 ¶ 13. As a result, he regularly experiences debilitating pain and discomfort in his shoulders, arms and back that limits his movement and interferes with his ability to sleep. *Id.* ¶ 14-16.

While in pretrial detention at Corrigan-Radgowski, Sherman spent 21-22 hours per day in his cell, sitting or lying on his bunk. *Id.* ¶ 17. His bunk, a steel platform mounted to the wall, was

covered by a mattress issued by the Department of Correction. *Id.* ¶ 18. The mattress was made of polyester batting covered with vinyl and was 3-4 inches thick. *Id.* ¶¶ 18-20. It was only designed to withstand about 70 pounds of pressure before reaching maximum compression; however, Sherman, like most other male inmates at Corrigan-Radgowski, weighs far more than 70 pounds. *Id.* ¶ 21. His mattress therefore reached compression in a very short time, and at full compression, was only about half an inch thick. *Id.* ¶ 24. Lying on the compressed mattress severely aggravated Sherman's underlying back and shoulder problems and prevented him from being able to sleep. *Id.* ¶ 25.

Sherman contends that the defendants were responsible for ensuring that inmates at Corrigan-Radgowski were provided with adequate medical care. *Id.* at ¶ 5. Defendants Cook, Martin, Corcella, Bragdon and Greene were additionally responsible for ensuring that the overall conditions of confinement at Corrigan-Radgowski met constitutional standards. *Id.* at ¶ 5. Although those defendants were aware of the issue with the compressed mattresses, they failed to address the problem and refused to replace mattresses more often than once a year. *Id.* ¶ 27. As a result, inmates were left with fully compressed mattresses offering no protection from the underlying steel bedframe for at least 48 weeks of the year. *Id.* ¶ 28. In the past, medical providers had prescribed inmates with underlying medical conditions accommodations for the thin mattresses, such as double mattresses, egg crate bed toppers, or therapeutic mattresses. *Id.* ¶ 33. However, for security reasons and because of the cost, those accommodations were recently prohibited. *Id.* ¶ 34.

For Sherman, the mattress policy made time spent in his bunk "nearly unbearable." *Id.* ¶ 29. In October 2018, Sherman began filing complaints about his mattress and personally

3

informed Cook, Corcella, Martin, Bragdon and Greene that the compressed mattress exacerbated his underlying medical conditions and prevented him from sleeping. *Id.* at ¶ 35(a)-(b). However, Sherman's mattress was not replaced, nor was he given accommodations. *Id.*

Sherman additionally submitted dozens of written requests to the medical department about his shoulder and back pain. In response to his requests, he was seen by nurses Phillips, Slivinski, Dhillon, Shaw, Henderson, Hill, and Athenian. *Id.* at ¶ 35(c). Although he described his "extreme pain" to each nurse, no doctor was contacted, and Sherman was not prescribed pain medication. *Id.* When he wrote to the medical department to complain that he had waited months to see a doctor, Phillips told him that if he wanted to see a doctor, he should request a transfer to a different correctional facility. *Id.*

Sherman was also seen by Moyer, Ashraf, Williams, Feder, and McPherson about his back pain. *Id.* at ¶ 35(e). Despite the severity of his condition and the extent to which his pain interfered with his ability to sleep, he was prescribed only Motrin, Tylenol, and a topical muscle rub, which did not relieve his symptoms. *Id.* Although Sherman repeatedly told the defendants that those medications did not sufficiently address his pain, he was afforded no other treatment, even after MRI results and X-Rays confirmed his diagnoses. *Id.* The defendants additionally refused to order a therapeutic mattress for him, following instructions from Cook, Martin, Corcella, Bragdon, and Greene regarding the mattress policy. *Id.*

Sherman ultimately wrote to the mental health department seeking help with his sleep problems and was told by Brennan that the mental health department could not prescribe medication to help with sleep issues. *Id.* at ¶ 35(d). He was additionally unable to schedule an appointment with a mental health provider. *Id.*

4

II.   <u>Analysis</u>

    A.  <u>Eleventh Amendment</u>

       i.  <u>Section 1983 Claims</u>

Sherman brings claims against Cook, Martin, Bragdon, Greene, Moyer, Ashraf, Williams, Feder and McPherson in both their "individual and official capacities" and seeks injunctive and declaratory and relief, as well as money damages. *See* Compl., Doc. No 1 at ¶ 10, 43. He brings claims against Philips, Slivinski, Dhillon, Shaw, Henderson, Hill, Athenian and Brennan in their individual capacities only.[1]

It is well settled that the Eleventh Amendment bars suits for money damages against state officials acting in their official capacities. *See Kentucky v. Graham,* 473 U.S. 159, 169 (1985) ("absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court…[t]his bar remains in effect when state officials are sued for damages in their official capacity"). However, the Eleventh Amendment does not bar suits for money damages against state officials acting in their individual capacities, even if "the acts complained of were taken in the course of their official duties." *See Ruggiero v. Fischer*, 2017 U.S. Dist. LEXIS 138240, at *9 (W.D.N.Y. Aug. 25, 2017). Accordingly, Sherman may seek money damages for violations of his constitutional rights under section 1983 against defendants sued in an individual capacity.

---

[1] Sherman does not indicate whether he is suing Corcella in his individual or official capacity. I construe the complaint liberally to allege claims against Corcella in both his official capacity and in his individual capacity because Sherman has requested both monetary and injunctive relief. *See, e.g., Perry v. Wright,* 2013 U.S. Dist. LEXIS 36250, at *8 S.D.N.Y. Mar. 8, 2013) ("[i]n liberally construing the Complaint, the Court assumes that Plaintiff intended to sue the Defendants in both their official capacity… as well as their individual capacity").

Under the doctrine of *Ex Parte Young*, state officers may additionally be sued in their official capacities so long as a plaintiff seeks prospective injunctive relief for violations of constitutional rights or federal law. *Ex Parte Young*, 209 U.S. 123 (1908); *see also CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002). However, in the Second Circuit, "an inmate's transfer from a prison facility generally moots claims for…injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). In order to overcome that jurisdictional bar, a plaintiff must establish that the challenged actions are "capable of repetition, yet evading review. This exception will be applied…if (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." *Pugh v. Goord*, 571 F. Supp. 2d 477, 488 (S.D.N.Y. 2008) (internal citations omitted).

Sherman was transferred to Robinson Correctional Institution after filing his complaint in this case. *See* Notice of Change of Address, Doc. No. 8. He has not alleged any facts indicating deliberate indifference to serious medical needs or conditions of confinement at Robinson. Accordingly, his request for injunctive relief will be dismissed as moot. However, if Sherman can establish that his "injury or need for injunctive relief persists" despite his transfer, and that there is a named defendant with authority to implement that relief at Robinson, he may amend his complaint to include those claims.[2] *Sherman v. Corcella*, 2020 U.S. Dist. LEXIS 125931, at

---

[2] I note Sherman may not seek prospective injunctive relief from defendants sued only in their individual capacities because those defendants would not have authority to authorize the requested relief unless acting in their official capacities. *See Kuck v. Danaher*, 822 F. Supp. 2d 109, 143 (D. Conn. 2011).

*56 (D. Conn. July 16, 2020) (permitting plaintiff to amend complaint if he could sufficiently allege continuing need for injunctive relief and named defendant with authority to implement that request).

Sherman additionally seeks general declaratory relief, requesting "a finding of fact that the acts or omissions described herein violated Sherman's rights under the Constitution of the United States." *Id.* at ¶ 43. However, declaratory relief operates prospectively to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Colabella v. American Institute of Certified Public Accountants*, 2011 U.S. Dist. LEXIS 110982 at *66 (E.D.N.Y. Sept. 28, 2011) (citations omitted). Because Sherman's request for relief concerns only past actions, the request is dismissed.

## ii.  Claims under the ADA and RA

With regard to Sherman's claims for damages under Title II of the ADA and the RA, it is clear that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001). However, the extent to which a plaintiff may bring official capacity suits under the ADA and RA is an area of unsettled law in the Second Circuit. *See Cosby v. Rusi,* 2020 U.S. Dist. LEXIS 115676, at *11 (D. Conn. July 1, 2020); *Monroe v. Gerbing*, 2017 U.S. Dist. LEXIS 212172, at *44 (S.D.N.Y. Dec. 27, 2017) (collecting cases). Some courts have concluded that prison officials can be sued for damages in their official capacities because the real party in interest in an official-capacity suit is the governmental entity, which is subject to liability under the ADA and RA. *See Cosby*, 2020 U.S. Dist. LEXIS 115676, at *11 (collecting cases).

7

However, to overcome a state's sovereign immunity from a suit for money damages under the Eleventh Amendment, a plaintiff must additionally "allege that his mistreatment was motivated by either discriminatory animus or ill will due to disability." *Id.; see also Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 112 (2d Cir. 2001); *Monroe,* 2017 U.S. Dist. LEXIS 212172, at *46 (S.D.N.Y. Dec. 27, 2017). Because I dismiss Sherman's claims under the ADA and RA on the merits, as discussed below, I decline to address the issue.

### iii.   State Constitutional Claims

As discussed below, because I dismiss the state constitutional claims on the merits, I do not consider the extent to which they are barred by the Eleventh Amendment.

### B.   Claims Under the Americans with Disabilities Act and Rehabilitation Act

The ADA and RA both protect individuals from discrimination on the basis of recognized disability. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the RA requires that "[n]o otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Although there are differences with regard to what entities the ADA and RA are applicable to, the standards "adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 [of the RA]." *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). Accordingly, courts have analyzed claims under the ADA and RA

8

"identically." *Id.*

To state a cognizable claim under the ADA and RA, a plaintiff must establish: (1) the plaintiff is a qualified person with a disability; (2) the defendants are considered an entity subject to the ADA, and; (3) the plaintiff was denied the opportunity to participate in or benefit from an institutional program, service, or activity, or otherwise discriminated against because of his disability. *Id*.

It is well settled that the protections of both the ADA and the RA "undoubtedly apply to state prisons and their prisoners." *Wright v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 831 F.3d 64, 72 (2d Cir. 2016). However, neither the ADA nor the RA "applies to claims regarding the adequacy or substance of services provided by correctional departments or provides a remedy for medical malpractice." *Reese v. Breton*, 2020 U.S. Dist. LEXIS 35250, at *12 (D. Conn. Mar. 2, 2020). Accordingly, courts "routinely dismiss ADA suits by disabled inmates that allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his or her disability." *Elbert v. New York State Dep't of Corr. Servs*., 751 F. Supp. 2d 590, 595 (S.D.N.Y. 2010).

Here, Sherman alleges that he suffers from shoulder conditions that sometimes interfere with complete motion and often prevent him from being able to sleep. *See* Compl., Doc. No. 1 ¶ 13. For purposes of this order, I assume that he is disabled within the meaning of the ADA, and that the official capacity suit is essentially one against a state entity subject to liability under the ADA and RA.  *See Wright,* 831 F.3d 64 at 72; *Cosby*, 2020 U.S. Dist. LEXIS 115676, at *11. However, assuming those two requirements are satisfied, Sherman fails to identify any program, benefit or activity that he was denied the ability to participate in because of his disability. He

9

additionally does not allege discrimination on the basis of disability. Instead, Sherman alleges that medical staff failed to provide him an accommodation for the compressed mattress, and failed to adequately treat his medical conditions. *See* Compl., Doc. No. 1 ¶¶ 33, 35(e). Accordingly, his claim is based on a lack of access to adequate medical care, not denial of access to programs or services available to non-disabled persons, or discrimination on the basis of disability. Because Sherman fails to state a plausible claim under the ADA and RA, those claims are dismissed under 28 U.S.C. § 1915A(b)(1).

### C. Federal Constitutional Claims

Sherman claims that the defendants were deliberately indifferent to his medical needs and maintained unsafe conditions of confinement in violation of the Eighth and Fourteenth Amendments. *See* Compl., Doc. No. 1 at ¶¶ 39-40. Sherman signed his complaint in this case on September 7, 2020. *Id.* at ¶ 16. Records available through the Connecticut Department of Correction website show that Sherman was sentenced on September 8, 2020, and that his claims therefore allege violation of his constitutional rights while in pretrial detention, prior to sentencing. *See Offender Information Search*, CONNECTICUT STATE DEPARTMENT OF CORRECTIONS, http://www.ctinmate info.state.ct.us/.

Because Sherman alleges violations of his constitutional rights while he was held as a pretrial detainee, his claims of deliberate indifference to medical needs and conditions of confinement are cognizable under the Fourteenth Amendment instead of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claims of deliberate indifference to conditions of confinement asserted by a pretrial detainee in state custody are evaluated under the due process clause of the Fourteenth Amendment because pretrial detainees have not yet been

convicted of a crime and "thus many not be punished in any manner—neither cruelly and unusually nor otherwise"); *see also Walker v. Wright,* 2018 U.S. Dist. LEXIS 81408, at *8 (D. Conn. May 15, 2018) (analyzing pretrial detainees' claims of deliberate indifference to medical needs under Fourteenth Amendment).

### 1.   Deliberate Indifference to Serious Medical Needs

Sherman alleges that the medical providers and nurses at Corrigan-Radgowski were deliberately indifferent to his medical needs in violation of the Fourteenth Amendment by failing to adequately treat his shoulder and back conditions, and by refusing to prescribe him accommodations for his compressed mattress.

### i.   Failure to Provide Adequate Treatment

To establish deliberate indifference to medical needs in violation of the Fourteenth Amendment, a pretrial detainee must first establish that the medical need in question was "sufficiently serious." *Granger v. Santiago*, 2019 U.S. Dist. LEXIS 64765, at *23 (D. Conn. Apr. 16, 2019). A "sufficiently serious" medical condition is a condition that may lead to extreme or chronic pain, degeneration or death. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). A medical condition that is not initially serious may meet this standard where, left untreated, the condition could "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000). The Second Circuit has identified several factors relevant to the inquiry of whether a medical condition is sufficiently serious, including whether the injury is one that "a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or

the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Here, Sherman states that he suffers from shoulder and back conditions that cause him severe, chronic pain, limit his movement on a daily basis, and prevent him from being able to sleep. *See* Compl., Doc. No. 1 at ¶ 13. For purposes of initial review, those allegations establish that Sherman's condition is sufficiently serious. *See, e.g., Brock*, 315 F.3d 158, 163 ("[w]e do not…require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one"); *see also Diaz v. Hanna,* 2020 U.S. Dist. LEXIS 205068, at *13 (D. Conn. Nov. 3, 2020) (allegations of neck, spinal, and back injuries sufficient for claim to proceed at initial review stage).

In addition to alleging a sufficiently serious medical condition, a plaintiff must establish that in failing to provide care, an official acted with a sufficiently culpable state of mind. "An official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety." *Id.* Although mere negligence is insufficient to establish deliberate indifference, a defendant's conduct is measured by an objective standard, and therefore it is not necessary that an official "have subjective awareness that the official's acts (or omissions) have subjected the pretrial detainee to a substantial risk of harm." *Darnell*, 849 F.3d 17 at 35. Instead, deliberate indifference may be established where defendants "should have known that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Charles v. Orange Cty.,* 925 F.3d 73, 87 (2d Cir. 2019).

Here, Sherman alleges that he sought treatment from the medical department for his

shoulder conditions and specifically described the pain he was experiencing to nurses Phillips, Slivinski, Dhillon, Shaw, Henderson, Hill and Athenian. *Id.* at ¶ 35(c). However, the nurses failed to call a doctor to examine Sherman. *Id.* Phillips additionally indicated that he would have to transfer to a different correctional facility in order to be seen by a doctor. *Id.* at ¶ 35(c). For purposes of initial review, allegations that the nurses were aware that Sherman was experiencing chronic, severe pain yet refused to call a doctor despite repeated requests are sufficient to support a claim of deliberate indifference. Accordingly, the Fourteenth Amendment claim will proceed against nurses Phillips, Slivinski, Dhillon, Shaw, Henderson, Hill and Athenian.

Sherman was also seen by medical providers Moyer, Ashraf, Williams, Feder, and McPherson. *Id.* at ¶35(e). In response to his complaints of pain, the defendants prescribed over-the-counter pain medication, which did not relieve his symptoms. Sherman alleges that he repeatedly informed the defendants that the over-the-counter remedies were insufficient and that it is "documented their previous ordered scripts did not relieve Sherman's pain." *See* Compl. Doc. No. 1 at ¶ 35(d). He additionally notes that he was given an MRI and X-Ray, which confirmed that he was suffering from a variety of shoulder problems. However, the medical providers failed to prescribe any additional treatment.

Initially, it is clear that "mere disagreement over the proper treatment is not actionable under the Fourteenth Amendment." *Thomas v. Westchester Cty.*, 2013 U.S. Dist. LEXIS 93697, at *18 (S.D.N.Y. July 3, 2013). Courts have held that allegations that an inmate was prescribed only over-the-counter remedies rather than prescription pain medication amount to a mere disagreement over treatment and do not, without more, establish deliberate indifference. *Id.* (collecting cases). "So long as the treatment that the prisoner received was adequate, the fact that

13

he might have preferred a different treatment does not give rise to a constitutional claim." *Faraday v. Lantz*, 2005 U.S. Dist. LEXIS 33737, at *16 (D. Conn. Dec. 12, 2005).

Here, however, Sherman alleges that he repeatedly informed the defendants that the over-the-counter remedies were inadequate but was not prescribed any alternate or additional treatment. Accordingly, Sherman does not "take[] exception to defendants' decision to prescribe medication conservatively," but instead contends that when those medications failed to address his pain, no other treatment was provided. *Reyes v. Ellen Gardener*, 93 F. App'x 283, 285 (2d Cir. 2004). For purposes of initial review, those allegations sufficiently establish that the defendants were "not merely negligent, but aware that their prescribed treatment plan was medically inadequate." *Reyes*, 93 F. App'x 283, 285; *see also Faraday*, 2005 U.S. Dist. LEXIS 33737, at *16-17 ("in certain instances, a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan"). Accordingly, the Fourteenth Amendment claim for deliberate indifference to serious medical needs will proceed against medical providers Moyer, Ashraf, Williams, Feder and McPherson.

Finally, Sherman alleges that he sought pain medication from Brennan, a mental health worker and was told that the mental health unit did not prescribe pain medication. Research reveals no cases holding that refusing a request for pain medication by the mental health unit where complaints of pain should be directed to the medical unit constitutes deliberate indifference. Because there is no legal basis for the deliberate indifference claim against Brennan, that claim is dismissed under 28 U.S.C. § 1915A(b)(1).

ii.   Failure to Prescribe Mattress Accommodations

14

Courts in this circuit have recognized that "the condition of a prisoner's mattress may be so inadequate as to constitute an unconstitutional deprivation." *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013). In order to state a claim for deliberate indifference to medical needs based on inadequate bedding, "a plaintiff must allege that he had a medical condition requiring a non-standard bed to protect against serious damage to his future health or that the medical condition was itself created by an inadequate bed or mattress." *Jones v. City of New York*, 2020 U.S. Dist. LEXIS 58735 at *19 (S.D.N.Y. Apr. 2, 2020) (internal quotations). Additionally, a plaintiff must establish that he requested a non-standard mattress to accommodate that condition, and that the request was denied by an official "who knew of and disregarded an excessive risk to the plaintiff's health or safety." *Ruiz v. City of N.Y.*, 2018 U.S. Dist. LEXIS 139861, at *8 (E.D.N.Y. Aug. 17, 2018).

Here, Sherman has alleged that he had serious shoulder conditions that required a non-standard bed and that his condition significantly worsened due to the thin mattress. *Id.* at ¶ 35(c). Accordingly, Sherman has plausibly alleged that he had an objectively serious need for a non-standard mattress. *See Diaz,* 2020 U.S. Dist. LEXIS 205068, at *13.

Sherman contends that the medical providers were explicitly aware of the way the mattress exacerbated his underlying shoulder condition and caused him pain. However, in accordance with policy at Corrigan-Radgowski, the medical providers refused to prescribe an accommodation. Courts have held that refusal to prescribe an accommodation based "solely on DOC policy and not on independent medical judgment" may constitute deliberate indifference to serious medical needs. *See Ruiz,* 2018 U.S. Dist. LEXIS 139861, at *14 (allegations that denial of mattress accommodation were based "solely on the DOC policy" and not "independent

medical judgment" sufficient to establish deliberate indifference) (internal citations omitted); *see also Walker v. Cty. of Nassau*, 2016 U.S. Dist. LEXIS 130641, at *6 (E.D.N.Y. Sept. 22, 2016) ("[i]f the additional or different pain medication was medically necessary, but defendants…refused to prescribe it solely based upon [correctional facility] policy, such refusal supports an inference of deliberate indifference"). Accordingly, the claim for deliberate indifference to medical needs for failure to prescribe mattress accommodations will proceed against defendants Moyer, Ashraf, Williams, Feder and McPherson.

2.   Conditions of Confinement

Sherman additionally contends that Cook, Margin, Bragdon, Corcella and Greene were deliberately indifferent to unconstitutional conditions of confinement by failing to remedy the issue with the compressed mattress. To state an Eighth Amendment claim for unconstitutional conditions of confinement, a plaintiff must allege facts "supporting an objective element, the deprivation that he suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and a subjective element, that the defendant acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Diaz*, 2020 U.S. Dist. LEXIS 205068, at *9. Courts in this circuit have treated claims involving inadequate mattresses "as both as both conditions-of-confinement claims and denial of adequate medical care claims." *Ruiz*, 2018 U.S. Dist. LEXIS 139861, at *13. Accordingly, a plaintiff must plead similar facts under both theories of liability. "Regardless of how the claim is classified, the plaintiff must allege that the defendant acted with deliberate indifference." *Id.*

As stated above, Sherman has adequately pled that he had an objectively serious medical condition requiring a non-standard mattress. Sherman additionally alleges that he spoke

16

personally to defendants Cook, Martin, Corcella, Bragdon and Greene about the compressed

mattress and explained the way it exacerbated his underlying shoulder conditions and prevented

him from sleeping. However, none of the defendants responded to his requests for a new

mattress or mattress accommodation.[3] It is not clear from the face of the complaint the extent to

which those defendants knew of Sherman's underlying condition or the severity of his pain when

they failed to provide him a new mattress. Accordingly, I will permit the claim to proceed

against defendants Cook, Martin, Corcella, Bragdon and Greene for purposes of conducting

discovery on whether the defendants acted intentionally or, at a minimum, recklessly failed to act

with reasonable care to minimize the risk to Sherman's health and safety posed by the

compressed mattress. *See e.g., Jones*, 2020 U.S. Dist. LEXIS 58735 at *24 (allegations that

prison officials knew the mattress was causing extreme pain and failed to remedy the problem

sufficient to establish requisite *mens rea*); *see also Phelps v. Kapnolas,* 308 F.3d 180, 186 (2d

Cir. 2002) (subjective element of deliberate indifference claim met where plaintiff alleged

"prison officials knew [condition] was inadequate and likely to inflict pain and suffering"); *Diaz,*

2020 U.S. Dist. LEXIS 205068, at *14 (subjective prong met where plaintiff submitted inmate

request forms that informed officials that he had underlying conditions exacerbated by thin

mattress).

     D.  <u>State Constitutional Claims</u>

     Sherman claims that the defendants were deliberately indifferent to his medical needs and

---

[3] Sherman states that Cook told him "there's a lot of complaints about the mattresses but I cannot help you today," that Martin told him he "didn't have anything to do with the mattress," and that the other defendants gave responses such as "write to me" and "I'll see what I can do." *Id.* at ¶ 35(b).

conditions of confinement in violation of Article First, sections 8 and 9 of the Connecticut Constitution. Article I, section 8 provides, "no person shall…be deprived of life, liberty or property without due process of law," while section 9 provides, "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law." Conn. Const. Art. I., §§ 8, 9. The Connecticut Supreme Court has interpreted those provisions to prohibit "governmental infliction of cruel and unusual punishments." *State v. Santiago*, 318 Conn. 1, 17 (2015).

However, the Connecticut Supreme Court has yet to recognize a private right of action for damages for unsafe conditions of confinement or deliberate indifference to medical needs brought by an inmate under either section 8 or section 9 of the Connecticut Constitution. *See Minto v. Dep't of Mental Health & Addiction Servs.,* 2018 Conn. Super. LEXIS 75 at *8 (Conn. Super. Ct. Jan. 11, 2018) ("Connecticut courts have previously unanimously declined to recognize a private cause of action under article first, § 8, of the Connecticut Constitution"); *Harnage v. Shari*, 2019 U.S. Dist. LEXIS 226648, at *17 (D. Conn. Dec. 3, 2019) (Connecticut Supreme Court "has not applied § 9 in the context of a prisoner case involving a claim for deliberate indifference to a prisoner's serious medical need"); *Holley v. Comm'r Cook*, 2020 U.S. Dist. LEXIS 207053, at *8 (D. Conn. Nov. 5, 2020) ("the Connecticut Supreme Court…has not applied section 9 in the context of a case filed by an inmate in connection with his classification or his conditions of confinement"); *Torres v. Armstrong*, 2001 Conn. Super. LEXIS 2575, at *5-*7 (Conn. Super. Sept. 6, 2001) (refusing to recognize inmate's claims for money damages and injunctive relief brought directly under Article First, §§ 1, 4, 8, 9, 14 and 20 of the Connecticut constitution).

Although the Connecticut Supreme Court recognized a private cause of action for

monetary damages under Article I, sections 7 and 9 for claims of unreasonable searches and seizures in *Binette v. Sabo*, 244 Conn. 23 (1998), the Court was careful to emphasize the narrowness of that holding, noting, "our decision to recognize a *Bivens*-type remedy in this case does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47.

Because the Connecticut Supreme Court has yet to recognize a private cause of action for money damages for violations of Article First, Sections 8 or 9 in the context of a claim for deliberate indifference to conditions of confinement or an inmate's serious medical need, Sherman's state constitutional claims are dismissed for failure to state a cognizable claim. *See* 28 U.S.C. § 1915A(b)(1); *see also Pagan v. Dougherty,* 2019 U.S. Dist. LEXIS 106786, at *20 (D. Conn. June 26, 2019) (dismissing state constitutional claims where no private right for money damages had been recognized).

III.     Conclusion

All ADA and RA claims and the claim against Brennan are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). Sherman's request for injunctive and declaratory relief, as well as his state constitutional claims, are additionally **DISMISSED** pursuant to 28 U.S.C. § 1915A(b). The case will proceed against Cook, Martin, Bragdon, Greene, Phillips, Slivinski, Dhillon, Shaw, Moyer, Henderson, Hill, Ashraf, Williams, Athenian, Feder, McPherson, and Corcella, in their individual capacities, for deliberate indifference to medical needs and conditions of confinement in violation of the Fourteenth Amendment.

The court enters the following additional orders.

(1)     **The Clerk shall** verify the current work address for defendants Cook, Martin, Bragdon, Greene, Phillips, Slivinski, Dhillon, Shaw, Moyer, Henderson, Hill, Ashraf, Williams, Athenian, Feder, McPherson, and Corcella with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver request on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the cost of such service.

(2)     **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on defendants Cook, Martin, Bragdon, Greene, Phillips, Slivinski, Dhillon, Shaw, Moyer, Henderson, Hill, Ashraf, Williams, Athenian, Feder, McPherson, and Corcella in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, within twenty-one (21) days from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3)     T**he Clerk shall** send Sherman a copy of this Order.

(4)     **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim

20

recited above. They also may include all additional defenses permitted by the Federal Rules.

(6)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If Sherman changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Sherman must give notice of a new address even if he is incarcerated. Townsend should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Sherman has more than one pending case, he should indicate all the case numbers in the notification of change of address. Sherman should also notify the defendants or the attorney for the defendants of his new address.

(9)     Sherman shall utilize the Prisoner Efiling Program when filing documents with the court. Sherman is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(10)     The Clerk shall immediately enter the District of Connecticut Standing Order Re:

21

Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Sherman.

So ordered.

Dated at Bridgeport, Connecticut, this 29th day of January 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

22